SUPERIOR COURT
OF THE

RICHARD F. STOKES
*JUDGE*

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DE 19947
TELEPHONE (302) 856-5264

September 26, 2016

John F. Kirk, IV, Esquire
Deputy Attorney General
Department of Justice
114 E. Market Street
Georgetown, DE 19947

Eric G. Mooney, Esquire
Mooney & Andrew, P.A.
11 S. Race Street
Georgetown, DE 19947

> RE: *State of Delaware v. Theodore B. Revel,*
> Def. I.D. # 1511014394

> Submitted: September 12, 2016
> Decided: September 26, 2016

Dear Counsel:

On September 9, 2016 carrying into September 12, 2016, the Court held a suppression hearing in the case of *State of Delaware v. Theodore B. Revel.* Three issues were presented to the Court. First, Theodore B. Revel ("Revel") moved to suppress all evidence relating to his arrest for driving under the influence because the arresting officer, Tfc. Jones, did not have probable cause to believe Revel had committed the crime. Second, Revel moved to suppress all evidence relating to the blood draw that took place while he was hospitalized because the blood was illegally drawn without his valid consent. Lastly, Revel moved to suppress statements made

1

after he was advised of his *Miranda*[1] rights because he did not validly waive his rights. For the reasons discussed below, the Court denies the first motion to suppress and grants the second and third motions to suppress.

## FINDINGS OF FACT

The evidence presented at the hearing established that on November 22, 2015, Revel was traveling westbound on Neals School Road in Seaford, Delaware when he veered off the roadway and collided with a tree. The crash occurred in the yard of Donna Tucker, who observed the crash and called 911. She stated that there were no obstructions in the road to cause the accident. Emergency responders reported to the scene and transported Revel to Nanticoke Memorial Hospital. Sometime after Revel had been taken to the hospital, Tfc. Jones responded to the scene where he conducted an inventory search of the vehicle and spoke with emergency responders. During the inventory search Tfc. Jones found a total of 3.9 grams of cocaine and various drug paraphernalia. At this time, Tfc. Jones was informed by emergency responders that Revel was "incoherent" when he was taken to the hospital and that he had vomited on himself. Soon after, Tfc. Jones received a call from his dispatcher informing him that a small baggie of what appeared to be cocaine had been found in the ambulance that transported Revel to the hospital. Tfc. Jones went to the hospital for further investigation.

Upon arriving at the hospital, Tfc. Jones located Revel in the emergency room, where he was receiving medical treatment. He was laying on a hospital gurney, hooked up to an IV, his neck in a brace, and several medical personnel attending to him. Tfc. Jones observed that Revel was excessively talkative, had redness around his nose, and he was confused as to the details of the accident. He further noticed that Revel was aggravated by the medical personnel and took a

---

[1] *Miranda v. Arizona,* 384 U.S. 436 (1966).

2

harsh tone with them. Tfc. Jones also noted that, while Revel was confused about the details of the accident, he appeared to be clear-headed, aware of the situation, and his speech was fair.

At 1:51 p.m. Tfc. Jones read Revel the Delaware State Police's Consent to Search form and obtained his signature. Tfc. Jones testified that he told Revel that he would like to draw his blood "for the case", that he read Revel the Consent to Search form, handed the form to him to read, and that Revel signed the form. According to Tfc. Jones, Revel took time to look at the document, but did not ask any questions. Tfc. Jones testified that he seemed to understand to what he was consenting. Not until redirect examination did Tfc. Jones testify that when discussing consent did Revel state that the testing would not reveal alcohol or drug use. Furthermore, it should be noted that there is a blank for a witness signature on the form, but no such signature was obtained. After Revel signed the consent form, a phlebotomist drew his blood.

At 3:13 p.m., while Revel was still in the hospital, Tfc. Jones read him his *Miranda* rights. Revel stated that he understood and waived his rights. According to Tfc. Jones, Revel was in the same state as when he consented to the blood draw. After the waiver, Tfc. Jones began to question Revel about the accident. Revel admitted to having been at a friend's house in Federalsburg, Maryland that morning, where he had consumed one can of beer, ingested one line of cocaine, and taken one and half Percocet pills. Revel also stated that right before the accident he began to cough excessively and feel strange. While Revel was driving, he thought he saw a deer in the road. The next thing he recalled was staring at the steering wheel of the vehicle after the accident, unable to move. Revel thought that he saw his son laying on the ground next to him, even though his son was not present at the scene of the accident and Revel was still seated

3

in the vehicle. Revel said that immediately after the accident he felt like he had died and was reflecting back on his life.

At 4:15 p.m. Revel was discharged from the hospital with no apparent injuries. Tfc. Jones transported him to the Troop 5 Police Station where warrants for the charges in the case were obtained. At 7:04 p.m., the arrest warrants were submitted and approved. Sometime around 7:04 p.m., Revel was taken to a magistrate for arraignment, where he was deemed to be too intoxicated for presentment. He was not arraigned until the following morning.

## DISCUSSION

I.     Motion to Suppress Evidence Relating to the DUI Arrest due to Lack of Probable Cause

a.   Applicable Law

The issue here is whether Tfc. Jones had probable cause to arrest Revel for driving a vehicle while under the influence of alcohol or drugs pursuant to 21 *Del. C.* § 4177.[2] The probable cause standard is explained in *Miller v. State*:

> We determine probable cause by the totality of the circumstances, as viewed by a reasonable police officer in light of his or her training and experience. To establish probable cause, the police need only present facts suggesting, in the totality of the circumstances, that a fair probability exists that the defendant has

---

[2] In 21 *Del. C.* §4177, it is provided in pertinent part as follows:

(a) No person shall drive a vehicle:

(1) When the person is under the influence of alcohol;

(2) When the person is under the influence of any drug;

(3) When the person is under the influence of a combination of alcohol and any drug;

(4) When the person's alcohol concentration is .08 or more; or

(5) When the person's alcohol concentration is, within 4 hours after the time of driving .08 or more. Notwithstanding any other provision of the law to the contrary, a person is guilty under this subsection, without regard to the person's alcohol concentration at the time of driving, if the person's alcohol concentration is, without 4 hours after the time of driving .08 or more and that alcohol concentration is the result of an amount of alcohol present in, or consumed by the person when that person was driving.

* * *

(c) For purposes of subchapter III of Chapter 27 of this title, this section and § 4177B of this title, the following definitions shall apply:

* * *

(5) "While under the influence" shall mean that the person is, because of alcohol or drugs or a combination of both, *less able than the person would ordinarily have been, either mentally* or physically, *to exercise clear judgment,* sufficient, physical control, or due care *in the driving of a vehicle.* [Emphasis added.]

4

committed a crime. A finding of probable cause does not require the police to uncover information sufficient to prove a suspect's guilt beyond a reasonable doubt or even to prove that guilt is more likely than not.[3]

### b. Motion to Suppress is Denied for Lack of Probable Cause for DUI Arrest

Examining the totality of the circumstances leads to the conclusion that Tfc. Jones had probable cause to arrest Revel for DUI. Based upon the circumstances of the situation, a reasonable police officer could conclude that Revel was less capable than the ordinary person of exercising clear judgment to operate a vehicle as a result of intoxication. The collision itself is evidence that Revel was driving erratically. When that fact is combined with the discovery of cocaine and drug paraphernalia in Revel's vehicle, his excessive talkativeness, the redness around his nose, and his confusion at the scene of the accident and the hospital, it becomes clear that Tfc. Jones had probable cause to arrest Revel for DUI. This is further bolstered by the fact that Revel was hostile toward the medical personnel treating him at the hospital. Revel's hostility was indicative of intoxication. A police officer may take into account a person's "irrational, erratic, or belligerent behavior in making his or her probable cause determination."[4] It is irrational to become easily and unjustifiably agitated by those offering help. This is comparable to the defendant in *State v. Trager* who irrationally fought a police canine rather than submitting to the dog, leading the police office to conclude that the defendant was intoxicated.[5] The facts that no field tests were given and that Revel's speech was "fair" do not undermine this probable cause analysis. When considering the totality of the circumstances, there was probable cause to arrest Revel for this offense.

---

[3] *Miller v. State*, 4 A.3d 371, 373 (Del. 2009) (citations omitted).
[4] *State v. Trager*, 2006 WL 2194764, at *6 (Del. Super. Ct. July 28, 2006).
[5] *Id.*

II.     Motion to Suppress Evidence Relating to the Lack of Consent for Blood Draw

    a. Applicable Law

The Fourth Amendment to the United States Constitution and Article I, Section 6 of the Constitution of the State of Delaware are designed to protect the citizenry from unreasonable searches and seizures.[6] Any search conducted without a warrant is "per se unreasonable subject to only a few specifically established and well-delineated exceptions."[7] One of the long recognized exceptions to the warrant requirement is the ability to consent to a search.[8] Anyone who has "common authority over...the place or effects being searched," may consent to a search so long as it is voluntary.[9] The burden of proving consent by a preponderance of the evidence rests squarely with the State.[10] Some of the factors to be considered in this determination are listed in *McVaugh v. State*:

> "(1) defendant's knowledge of the constitutional right to refuse consent; (2) defendant's age, intelligence, education, and language ability; (3) the degree to which the individual cooperates with police; and (4) the length of detention and nature of questioning, including the use of physical punishment or other coercive police behavior."[11]

    b. Motion to Suppress is Granted for Lack of Voluntary Consent

Under the circumstances of this case, it is unnecessary to analyze the *McVaugh* factors. The fact that Revel was incoherent as a result of his intoxication and/or the effects of the accident immediately stands out as problematical. Revel's incoherency indicates that he did not have the necessary mental capacity to consent to the blood draw. It is appropriate for the Court to consider the defendant's intoxication when determining whether he or she had the requisite

---

[6] U.S. Const. amend. IV; Del. Const. art. I, § 6.
[7] *McVaugh v. State*, 2014 WL 1117722, *2 (Del. Mar. 19, 2014) (citation omitted).
[8] *Id.*
[9] *Id.* Whether the standard is simply "voluntary" or includes a higher showing such as "intelligently" or "knowingly" is irrelevant here. Revel did not voluntarily consent, so it is impossible that consent would be found when the validity of the consent is held to an even higher standard.
[10] *Id.*
[11] *Id.*

mental capacity to consent.[12] Two cases are particularly instructive. For example, the Court in *State v. Gibbs* explained "Mr. Gibbs either had a head injury or he was intoxicated or both and this led to a reduced mental capacity. The State cannot show that Mr. Gibbs had the mental capacity to consent."[13] Moreover, the Court in *State v. Dempsey* held that "Dempsey was impaired and exhausted and realized that he was in a very difficult situation that would potentially affect both his job and freedom…[U]nder the circumstances, the Court cannot find that Dempsey had freely and intelligently and in an unequivocal manner waived a constitutional right."[14] Using these cases for guidance, the Court believes that it is appropriate to consider the mental state of the defendant, especially when the mental impairment is so severe as to render the person incoherent.

Extensive testimony was given regarding Revel's state of mind at the time of consent, nearly all of which points to his diminished mental capacity. First, emergency responders who transported Revel to the hospital informed Tfc. Jones that Revel was "incoherent" and that he had vomited on himself. Upon meeting Revel, Tfc. Jones also concluded in the Narrative Report that Revel "…appeared confused, initially asking this writer [Tfc. Jones] without being prompted where he was when the accident occurred." Furthermore, according to Revel, after the accident he had a hallucination of his son laying on the ground next to him at the scene of the collision and felt that he had died and was reflecting back on his life. Revel was also very talkative at the hospital and had redness around his nose, both indications of recent drug use. Most importantly, Tfc. Jones noted in his Narrative Report that Revel was too intoxicated to be presented for arraignment. Arraignment was set to take place sometime around 7:04 p.m. If Revel was

---

[12] *State v. Dempsey*, Del. Super., I.D. NO.: 12121117, Carpenter, J. (Aug. 30, 2013) (Letter Op.); *State v. Gibbs*, Del. CCP, Case No. 136012943, Reigle, J. (June 24, 2014) ("Delaware courts have considered head injuries and intoxication as factors in determining whether a defendant's consent to a blood test was voluntary.").

[13] *State v. Gibbs*, Del. CCP, Case No. 136012943, Reigle, J. (June 24, 2014) at 6.

[14] *State v. Dempsey*, Del. Super., I.D.# 12121117, Carpenter, J. (Aug. 30, 2013) (Letter Op.) at 4.

incoherent at the time of the accident, around 12:00 p.m., and still not sufficiently coherent to be arraigned at 7:04 p.m., it seems highly improbable that he had the requisite mental capacity to consent at 1:51 p.m. In light of Revel's incoherent mental state, as evidenced by the above testimony, the Court concludes that he did not have the capacity to consent to the blood draw. Tfc. Jones should have obtained a warrant for Revel's blood.

Tfc. Jones' testimony that Revel was clear-headed and appeared to be fully capable of giving voluntary consent was not persuasive. The contradictions in the Narrative Report compared to the hearing testimony could not be ignored. In what appeared to be a last minute addition to his testimony, Tfc. Jones added on redirect examination that Revel stated that he had nothing to lose because blood testing would not reveal incriminating evidence. There was no mention of this statement earlier in the hearing or in any reports. Also, Tfc. Jones testified that he was unable to give any of the field sobriety tests to Revel because he was being treated at the hospital, not because he was injured. In fact, Tfc. Jones testified that Revel did not appear to have any injuries. However, in the Narrative Report it is stated that the "walk and turn" test was not given because Revel was injured. Finally, Tfc. Jones wrote in the Narrative Report that Revel "appeared confused", even if only with regard to the circumstances of the accident, and that he was unable to be arraigned due to his "intoxicated stated [sic]." This is incongruent with his hearing testimony that Revel was clear-headed and did not seem intoxicated. The reliability of Tfc. Jones' testimony is suspect and, therefore, unpersuasive.

Furthermore, the unpersuasiveness of Tfc. Jones' testimony is underscored by the likelihood that Revel was in custody at the time of consent.[15] When a person is in custody, even

---

[15] *Miranda v. Arizona* described a person as being in custody when he or she has been "otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S 444. Thus, the central inquiry is whether a person would have felt free to leave the police encounter. Tfc. Jones testified that Revel would not have been free to leave the hospital. Also, all parties agree that Revel was in custody at 3:13 p.m. when his *Miranda* rights were

if not under arrest, he or she is more susceptible to police coercion which, if present, will negate voluntary consent.[16] There is no direct testimony that Tfc. Jones coerced Revel, but the circumstances of this case and Tfc. Jones' unreliable testimony do not inspire confidence in the legality of the consent. The failure to obtain witness signatures only heightens the Court's concern.[17] Had this check on police coercion been utilized, the Court would be able to more confidently rule that the circumstances of the consent were legal.[18] Further, if a witness had signed the Consent to Search Form, then the concerns overs Revel's mental capacity would be assuaged. However, the Court is unable to utilize this safeguard because the proper procedures were not followed. Upon consideration of the unique circumstances of this case, the Court finds that the State has failed to meet its burden. The consent was inadequate. Therefore, all evidence stemming from the illegal blood draw will be suppressed.

III.     Suppression of Evidence Relating to the Invalid Waiver of *Miranda* Rights

   a.  Applicable Law

The issue here is whether Revel's admission that he had consumed one can of beer, ingested one line of cocaine, and taken one and half Percocet pills prior to the accident should be suppressed. This statement was made after Revel had waived his *Miranda* rights. A defendant may waive his or her *Miranda* rights as long as the State can prove by a preponderance of the evidence that the waiver was knowing and intelligent.[19] In order for the Court to address

---

administered. There is nothing in the testimony to indicate that circumstances changed between 1:51 p.m., when the consent was obtained, and 3:13 p.m., when all parties agree Revel was in custody. Therefore, the logical conclusion is that Revel went into custody at some point before 1:51 p.m.

[16] Jimmie E. Tinsley, J.D., *Consent to Search Given Under Coercive Circumstances*, 26 Am. Jur. Proof of Facts 2d 465, §4 (2016).

[17] Consent forms and witness signatures are used to document a person's consent. "The purpose of documentation is to provide a record of informed consent in the event a question is later raised." Timothy B. Adelman, 1 Health. L. Prac. Guide §12:15, (2016). Additionally, the presence of a witness will ensure that the consent was obtained in the proper way and that the police officer did not resort to coercion.

[18] The Consent to Search form expressly called for a witness signature. The witness signature safeguard immediately loses its value if ignored by the police.

[19] *Marine v. State*, 607 A.2d 1185, 1195 (Del. 1992) (citation omitted).

whether Revel's waiver was valid, it must engage in a two-step inquiry into the totality of the circumstances.[20] The process was laid out in *Moran v. Burbine*:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.[21]

### b. Motion to Suppress is Granted for Lack of Knowing and Intelligent Waiver of *Miranda* Rights

The question here is whether Revel was able to understand his rights and the consequences of their waiver. Revel argues that his incoherency made it so he was unable to appreciate his actions. *Hubbard v. State* is instructive:

> This Court has recognized that prior intoxication does not, *per se*, invalidate an otherwise proper waiver of *Miranda* rights. Instead, the appropriate inquiry is "whether defendant had sufficient capacity to know what he was saying and to voluntarily intend to say it."[22]

Revel's incoherent state extends beyond mere intoxication. His capacity was diminished to the point that he was incoherent and unaware of what he was saying. Thus, he did not truly intend to make the waiver. This finding is supported by the totality of the circumstances, including Revel's incoherent state, his excessive talkativeness, the redness around his nose, the presence of cocaine and drug paraphernalia in the car and ambulance, as well as the delay in his arraignment due to intoxication. Thus, the waiver does not pass the *Moran* test, so the statement must be suppressed.

---

[20] *Id.* The totality of the circumstances analysis includes the "behavior of the interrogators, the conduct of the defendant, his age, his intellect, his experience, and all other pertinent factors." *Whalen v. State*, 434 A.2d 1346, 1352 (Del. 1981).

[21] *Id.* (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

[22] *Hubbard v. State*, 16 A.3d 912, 919 (Del. 2011) (citations omitted).

For the foregoing reasons the first motion to suppress regarding probable cause for arrest is denied, but the second motion to suppress regarding consent to the blood draw and the third motion to suppress regarding waiver of *Miranda* rights are granted.

IT IS SO ORDERED.

Very truly yours,

/s/ *Richard F. Stokes*

Richard F. Stokes

cc: Prothonotary's Office

11